UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CYNTHIA MORALES     CIVIL ACTION

VERSUS     18-808-SDD-RLB

DR. STEPHEN MCCULLOH,
CHERYL SMITH, LAUREN MILTON
KARLIE VIKOWSKI, OTHER UNKOWN
LIVINGSTON PARISH PERSONNEL, AND
LIVINGSTON PARISH

## RULING

This matter is before the Court on the *Motion to Dismiss for Failure to State a Claim*[1] filed by Lauren Milton, Parish of Livingston, Cheryl Smith, and Karlie Vikowski ("Defendants"). Plaintiff, Cynthia Morales ("Morales"), filed a *Memorandum in Opposition to Motion to Dismiss for Failure to State a Claim*,[2] to which Defendants filed a *Reply*,[3] and Morales filed a *Surreply*.[4] For the following reasons, the Court finds that the *Motion to Dismiss* filed by Defendants should be GRANTED.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of the alleged medical mistreatment of Morales while she was detained at the Livingston Parish Detention Center ("LPDC") from August 6 to August 10, 2017.[5] Morales alleges that, from the time of her arrest until she was bonded out of

---

[1] Rec. Doc. 7.
[2] Rec. Doc. 15.
[3] Rec. Doc. 19.
[4] Rec. Doc. 30.
[5] Rec. Doc. 27, p. 1. (Morales' *Complaint* uses both August 6 and August 7 as the first day of her incarceration).

LPDC, she presented "obvious symptoms of a serious eye infection."[6] Specifically, Morales alleges that she repeatedly informed her custodians that she is a carrier of the Methicillin-resistant Staphylococcus aureus ("MRSA") virus.[7] Morales alleges that she made "sick calls" and complained about her eye at least once a day while incarcerated and requested that she go to the hospital. Despite allegedly knowing that Morales is a carrier of the MRSA virus, Defendants did not arrange for a provider to prescribe antibiotics to Morales. On August 7, 2017, the first day of Morales' incarceration, her eye infection continued to worsen, and "[s]he became light sensitive and experienced significant physical pain."[8] Also on August 7, 2017, Morales allegedly received erythromycin, an antibiotic ointment, that is "known to *not treat* MSRA-related infections."[9] Morales alleges that Defendant Milton's administration of the antibiotic ointment without her first being seen by a medical provider amounts to deliberate indifference to Morales' medical need.[10] The next day, on August 8, 2017, Morales alleges that Defendant Wilder prescribed her two antibiotics – ceftriaxone and dicloxacillin - which also allegedly "*do not treat* MRSA-related infections."[11]

Based on the above allegations, Morales brings the instant action asserting claims under the Eighth Amendment, Fourteenth Amendment, 42 U.S.C. § 1983, and Louisiana law.[12] Specifically, Morales alleges that Defendant Livingston Parish and Defendant

---

[6] *Id.*
[7] *Id.*
[8] *Id.* at 8.
[9] *Id.* at 9 (emphasis in original).
[10] *Id.*
[11] *Id.* at pp. 11-12 (emphasis in original).
[12] *Id.* at 16.

Cheryl Smith[13] contracted with a physician assistant rather than a qualified health care provider in violation of Louisiana law.[14] Morales alleges that the "willful violation of state law by Defendants Parish and Smith directly impacted" Morales' constitutional rights to be free from cruel and unusual punishment and the right to due process as a pre-trial detainee.[15] Defendants now move to dismiss this action for failure to exhaust administrative remedies and for failure to state a claim upon which relief can be granted.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[16] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[17] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[18] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation

---

[13] Cheryl Smith is the medical director at the LPDC.
[14] Rec. Doc. 27, pp. 5-6.
[15] *Id.* at 6.
[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[17] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[18] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

of the elements of a cause of action will not do."[19] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[20] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[22] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[23] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[24] On a Motion to Dismiss, the inquiry is whether the allegations in the Complaint plausibly state a claim for relief.

### B. Federal and State Exhaustion

Defendants contend that this case should be dismissed because Morales failed to exhaust her administrative remedies before filing suit.[25] The Federal Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.[26]

---

[19] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter "*Twombly*").
[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[21] *Twombly*, 550 U.S. at 570.
[22] *Iqbal*, 556 U.S. at 678.
[23] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[24] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[25] Rec. Doc. 7-1, p. 1.
[26] 42 U.S.C. § 1997e(a).

Under the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."[27] If the PLRA applies, exhaustion is mandatory.[28]

Morales argues that neither the federal nor state PLRA applies to her because she was not incarcerated at the time she filed this suit.[29] In *Caddell v. Livingston*, the Southern District of Texas found the following:

> Every circuit court to consider this issue has held that the [Federal] PLRA's exhaustion provision does not apply to individuals who had already been released at the time of filing.[30] Further, although the Fifth Circuit has yet to rule on the applicability of the exhaustion provision in particular, it has held that that the PLRA's attorney's fees cap does not apply to individuals who were not incarcerated at the time of filing.[31] Like the exhaustion provision, the attorney's fees cap pertains to any action brought by "a prisoner who is confined to any jail, prison, or other correctional facility."[32] A single definition of "prisoner" applies to both the attorney's fees provision and the exhaustion requirement. Accordingly, both provisions bind only currently incarcerated or detained individuals.[33]

Considering the plain language of the Federal PLRA and the persuasive authority cited above, which Defendants have failed to address in their *Reply*, the Court finds that, as

---

[27] 42 U.S.C. § 1997e(h).
[28] *Jones v. Bock*, 549 U.S. 199, 211 (2007).
[29] Rec. Doc. 15, p. 5.
[30] *See Lesene v. Doe,* 712 F.3d 584 (D.C. Cir. 2013); *Talamantes v. Leyva*, 575 F.3d 1021 (9th Cir. 2009); *Cofield v. Bowser*, 247 F. App'x. 412 (4th Cir. 2007); *Norton [v. City of Marietta, OK,]* 432 F.3d 1145 (10th Cir. 2005); *Nerness v. Johnson*, 401 F.3d 874 (8th Cir. 2005); *Ahmed v. Dragovich*, 297 F.3d 201 (3rd Cir. 2002); *Greig v. Goord*, 169 F.3d 165 (2nd Cir. 1999).
[31] *Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000) ("We agree with the Eighth and Seventh Circuits which have held that this Act applies to only those suits filed by prisoners.").
[32] 42 U.S.C. § 1997e(d).
[33] *Caddell v. Livingston*, No. 4:14-CV-3323, 2015 WL 1247003, at *2 (S.D. Tex. Mar. 17, 2015) (*See also Charleston v. Richardson*, No. 5:18-0839, 2018 WL 6072020 (W.D. La. Nov. 20, 2018)).

Morales was not a prisoner at the time she filed suit, the exhaustion requirements of the PLRA do not apply to her federal claims.

Like the Federal PLRA, for state law claims, the Louisiana Prison Litigation Reform Act ("LPLRA") requires that "[n]o prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice."[34] However, the LPLRA also states, *inter alia*, that "[s]tatus as a 'prisoner' is determined as of the time the cause of action arises. Subsequent events, including post trial judicial action or release from custody, shall not affect such status."[35] Accordingly, courts in Louisiana have consistently found that the LPLRA applies to former inmates' claims arising under inadequate medical care while in custody.[36]

The Court finds that the provisions of the Louisiana PLRA apply to Morales' state law claims because her claims arose while she was incarcerated. Morales does not allege in her *Complaint* or *Amended Complaint*, that she exhausted any administrative procedures. Accordingly, the Court hereby dismisses Morales' state law claims without prejudice for failure to exhaust administrative remedies.[37]

---

[34] La. R.S. 15:1184(A)(2).
[35] La. R.S. 15:1181(6).
[36] *Duhe v. St. John the Baptist Par. Sheriff't Dep't*, 17-599 (La. App. 5 Cir. 4/11/18), 245 So. 3d 1244, 1246-47, *writ denied*, 2018-0764 (La. 9/21/18), 252 So. 3d 898 ("In the present case, the record reveals that Mr. Duhe was an inmate at the St. John Parish Jail at the time that his claims arose, and that he meets the definitions of both 'offender' under CARP and 'prisoner' under the PLRA"); *Dailey v. Travis*, 2004-0744 (La. 1/19/05), 892 So. 2d 17, 20 ("The fact that Dailey is no longer incarcerated has no effect on this matter.");
[37] The state law claims are dismissed without prejudice. In the event that Morales sought leave to amend her state law claims, the Court would decline to exercise supplemental jurisdiction over those claims in light of the dismissal of the federal claims, *infra.*

### C. Federal claims under 42 U.S.C. § 1983

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[38] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[39]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[40] To prevail on a Section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[41] A Section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[42]

### D. Claims Based on Deliberate Indifference

In order to state a cognizable claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious

---

[38] See *Migra v. Warren City School District Board of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[39] 42 U.S.C. § 1983.
[40] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); accord *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).
[41] See *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams,* 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).
[42] See *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).

medical needs."[43] Deliberate indifference is a high standard and requires actual knowledge and conscious disregard of a serious medical need of the plaintiff.[44] Whether the plaintiff received his preferred treatment is not the issue.[45] Additionally, unsuccessful treatment does not provide a basis for a claim under Section 1983 for violation of a constitutional right.[46] "Negligence, neglect or medical malpractice does not rise to the level of a constitutional violation."[47]

Here, Morales alleges that the medical staff knew that she carried MRSA, "yet made no arrangements for a provider with the authority to prescribe antibiotics to examine her,"[48] did not arrange for her to go to a hospital, and provided her "with a *prescription* antibiotic cream" without proper authority.[49] In *Munoz v. Khashdel*, a case involving a prisoner with MRSA and an infected eye, the court found that, although "[t]he nurse may have erred in not giving [the plaintiff] other medications or treatment, or in not sending him to a doctor sooner," the error was negligence or gross negligence, not deliberate indifference.[50] The court found the fact that the plaintiff "received eye drops and antibiotics shows the absence of deliberate indifference."[51]

Similarly, Morales alleges that she received antibiotic ointment on August 7, 2018, the first day of her incarceration.[52] Although the antibiotic ointment is alleged to not treat

---

[43] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).
[44] *Collins v. LeBlanc*, 2013 WL 4766791 (M.D. La. 2013).
[45] *Davis v. Roundtree*, 2014 WL 4627199 (M.D. La. 2014) (citing *Estelle*, 429 U.S. 97 (1976)).
[46] *Id.* (citing *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991).
[47] *Id.* (citing *Varnado, supra*).
[48] Rec. Doc. 15, pp. 2-3.
[49] *Id.* at 4 (emphasis in original).
[50] *Munoz v. Khashdel*, 2010 WL 272197 at *4 (S.D. Tex. 2010) (citing *Hare v. City of Corinth, MS.*, 74 F.3d 633 (5th Cir. 1996).
[51] *Id.*
[52] Rec. Doc. 27, pp. 8-9.

MRSA-related infections, Morales also had an examination on the following day, August 8, 2017. On that day, to the best of Morales' knowledge, Defendant Alonzo Wilder ("Wilder") prescribed two more antibiotics, also alleged to not treat MRSA-related infections.[53] Finally, on August 10, 2017, the final day of Morales' incarceration, Wilder is alleged to have given Morales another examination. Taking the *Complaint* as true, Morales' own allegations undermine her assertion that Defendants "willfully ignored Ms. Morales."[54] Considering Morales' allegations that she received medical attention on three out of her four days of incarceration, it cannot be said that the medical personnel "refused to treat [her], ignored [her] complaints, intentionally treated [her] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[55] "It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs."[56]

In *Mickens v. Stalder,* a prisoner with MRSA-like symptoms alleged that he was denied three requests for a blood test for MRSA, not examined for a knee injury for 12 days following a request, and received antibiotics for an infection.[57] The *Mickens* plaintiff alleged, *inter alia*, that the antibiotics were prescribed without proper diagnosis and that his untreated MRSA could lead to complications. The court noted, as in the present case,

---

[53] *Id.* at 11-12.
[54] Rec. Doc. 15, p. 2.
[55] *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001).
[56] *Mickens v. Stalder*, 2008 WL 544240, at *2 (W.D. La. 2008) (citing *Norton v. Dimazana*, 122 F.2d 286, 292 (5th Cir. 1997); *Callaway v. Smith County*, 991 F.Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Maywhether v. Foti*, 958 F.2d 91 (5th Cir. 1992).
[57] *Id.* at *2.

that the plaintiff admitted to being seen by medical staff and prescribed medication. Although the plaintiff in *Mickens* "disagree[d] with the medical treatment he received," his complaint did not contain allegations "that would tend to show Defendants acted with a culpable state of mind or that their actions were 'unnecessary and wanton.'"[58]

Like *Munoz* and *Mickens*, the fact that Morales received antibiotics and medical attention for her eye on three out of the four days of incarceration shows the absence of deliberate indifference. "[D]isagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs."[59] For these reasons, Count 2, claims based on deliberate indifference to the constitutional right to appropriate medical care against Livingston Parish, Smith, Dr. McCulloch, Milton, Wilder, and Vikowski are dismissed.

### E. *Monell*[60] Claims against Cheryl Smith and Livingston Parish

Because the Court finds, based on Morales' own allegations, that her medical treatment did not rise to the level of a constitutional violation, there can be no Section 1983 municipal liability. Therefore, Morales' *Monell* claims against Cheryl Smith and Livingston Parish are hereby dismissed with prejudice.[61]

---

[58] *Id.*
[59] *Id.*
[60] *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Under *Monell*, municipal liability for constitutional torts arises when the execution of an official policy causes the plaintiff's injury.
[61] *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013) ("All of [Plaintiff]'s inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation"); *Self v. City of Mansfield, Texas*, 369 F.Supp.3d 684, 699 (N.D. Tex. 2019)("Because the plaintiffs have not proved that jail employees acted with deliberate indifference, there is no underlying constitutional violation."); *See also Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010).

### III. CONCLUSION

For the reasons set forth above, Defendants' *Motion to Dismiss*[62] is hereby GRANTED. The Court also finds that granting leave to amend would be futile.[63] Morales' state law claims are hereby dismissed without prejudice and Morales' claims arising under federal law are hereby dismissed with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on July 2, 2019.

_____
**SHELLY D. DICK, CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[62] Rec. Doc. 7.
[63] *Foman v. Davis*, 371 U.S. 178, 83 (1962); There is no indication to this Court that Morales will be able to allege that her medical treatment was the result of deliberate indifference.

52004